Taft, J.
The first question to be determined is whether the Probate Court had any power to make the orders which it made with respect to the adoption of Cathy Sue.
Section 8004-6, General Code (now Section 3107.06, Revised Code), reads so far as pertinent:
“No final decree or interlocutory order of adoption shall be entered by the court unless there shall be filed with the court ivritten consents to the adoption, verified or acknowledged by the following:
í i # * #
“ (B) By each of the living parents * * * except as follows:
“ (1) The mother of an illegitimate child shall be considered * * * the sole parent and may give consent alone * * *
“(2) The consent of a parent shall not be required if the child is in the permanent custody of the Division of Social Administration, a county welfare department, a county child welfare board, or a certified organization.
“ (3) If a parent has been adjudged incompetent by reason of mental disability * * *
“ (4) If it is alleged in the petition that one or both of the parents have wilfully failed to properly support and maintain the child for a period of more than tivo years immediately preceding the filing of the petition, the court shall cause notice of the filing of said petition and the allegations of such failure to be given such parent or parents as provided in Section 10501-21 of the General Court. After such notice has been given, the Probate Court shall determine the issue as to such failure to *570 properly support and maintain the child. The consent of a parent found by the Probate Court to have wilfully failed to properly support and maintain the child for such period shall not be required.
“ (5) If the parents are dead or their place of residence is unknown and cannot with reasonable diligence be ascertained or there is no guardian of the person of such child, the consent may be given by the next friend.
a # # #
“(D) By any division, county department, or board, or certified organization, having the permanent custody of the child. « * #
<< * * *
“No final decree or interlocutory order of adoption shall be entered with respect to any child in the custody of the Juvenile Court or concerning whose custody or disposition proceedings are pending in such court until such custody or proceedings have been suspended or terminated by such court.” (Emphasis added.)
The findings of fact affirmatively establish that no consent to the adoption was given by petitioner, a living parent of Cathy Sue, as required by subdivision (B) of the foregoing statute; and that none of the exceptions to that requirement, which are specified in that subdivision, were applicable. In view of the absence of any. bill of exceptions, it is impossible to know exactly what the record of the Probate Court in the adoption proceeding showed or whether that record and any presumption with respect to the regularity thereof would support a conclusion of compliance with such subdivision (B) of the statute. See 1 American Jurisprudence, 675, 676, Section 78; 2 Corpus Juris Secundum, 440 et seq., Sections 50, 51.
This court has held that “a Juvenile Court is without jurisdiction to make permanent a temporary commitment of a dependent or delinquent child unless notice of the time and place of the hearing upon such matter is served on the parent or guardian of such child * * * as provided and directed by” statute. In re Frinzl, a Minor (paragraph one of the syllabus), 152 Ohio St., 164, 87 N. E. (2d), 583. In that case, it was held that an attack upon such “an order for permanent custody” by a habeas *571 corpus proceeding was “direct and not collateral.” See paragraph four of syllabus. See also Lewis v. Reed, 117 Ohio St., 152, 157 N. E., 897; Rarey v. Schmidt, 115 Ohio St., 518, 154 N. E., 914. Perhaps, it would be more accurate to recognize that such an attack is “collateral” but that such an attack can be successful where the order attacked is “void” because made without jurisdiction, and that such an attack is therefore as effective as though it had been “direct.”
So far as the rights of a parent with respect to a child are concerned, a decree of adoption of such child by someone else is as serious in every respect and its consequences are much more serious than a court order merely granting .permanent custody of such child to someone else. Thus, by a valid final decree of adoption, the parent is “divested of all legal rights and obligations due * * * from” the child and the child is made “free from all legal obligations of obedience or otherwise to” such parent. Section 8004-13, General Code (now Section 3107.13, Revised Code).
Therefore, it would necessarily seem to follow that compliance with the specific requirements of Section 8004-6, General Code, with respect to consents of parents, should be necessary to give a court jurisdiction to render a decree or order of adoption ; and that such an order made without compliance therewith could be successfully attacked as void in a habeas corpus proceeding. See 1 American Jurisprudence, 674, 675, Section 77.
Apparently, the Ramseys contend that the consents of parents required by Section 8004-6, General Code, were not necessary in the instant case because the Juvenile Court had previously determined that Cathy Sue was a “neglected child” and such court had therefore obtained “exclusive original jurisdiction” over her. In support of this contention, the Ramseys rely upon that portion of Section 1639-16, General Code (now Section 2151.23, Revised Code), which reads:
“(a) The [juvenile] court shall have exclusive original jurisdiction under this chapter or under other provisions of the General Code:
“1. Concerning any child who is (1) delinquent, (2) neglected, (3) dependent, crippled, or otherwise physically handicapped. ’ ’
*572 However, it is provided in Section 1639-30, General Code (now Section 2151.35, Revised Code), that, if the Juvenile Court finds that a child ‘ ‘ is delinquent, neglected, or dependent, it may by order * * * commit the child temporarily or permanently to the Division of Social Administration of the State Department of Public Welfare, or to a county department, board or certified organization.” Where a permanent commitment to such division, department, board or organization has been made and is in effect, paragraph (2) of subdivision (B) of Section 8004-6 does away with the necessity of getting the consent of a parent, and subdivision (D) of that statute requires the written consent of such division, department, board or organization.
It is apparent therefore that the General Assembly contemplated that a Juvenile Court might have previously determined that a child being adopted was “delinquent, neglected, or dependent” and still not have awarded permanent custody as contemplated by subdivision B (2) of Section 8004-6. Notwithstanding that it is apparent that the General Assembly contemplated such a possibility, it made no provision for dispensing-in such an instance with the consents of parents required by Section 8004-6, General Code. It is apparent therefore that, by what it has said, the General Assembly has negatived any intention to dispense with the requirements of Section 8004-6, General Code, with respect to filing consents of parents merely because the child being adopted has been determined by the Juvenile Court to be “delinquent, neglected, or dependent.”
The only error assigned by the Ramseys in this court is that the Probate Court erred “in vacating and setting aside its former order * * * whereby Cathy Sue # * * was adopted by” the Ramseys. However, this “court, in its discretion, may consider and decide errors which are not assigned or specified.” Section 2505.21, Revised Code (formerly Section 12223-21, General Code).
It may be effectively contended that, even if the decree providing- for adoption of Cathy Sue is void, the Ramseys had the right to her custody by reason of the November 14, 1952, and December 8, 1952, orders of the Juvenile Court finding- that she was a neglected child and committing her to the permanent custody of the Ramseys. See In re Frinzl, supra (152 Ohio St., 164), 178.
*573 However, Section 1639-35, General Code (now Section 2151.38, Eevised Code), provides that a commitment of a child by the Juvenile Court other than one to “the Boy’s or Girl’s Industrial School, or to the Ohio State Beformatory, or to the permanent custody of the State Department of Public Welfare, the Division of Social Administration in said department,- a county department, board or a certified organization * * * shall be temporary and shall continue for such period as designated by the court in its order, or until terminated or modified by the court, or until a child attains the age of twenty-one years. ’ ’ At most therefore, notwithstanding its terms, the order of commitment to the Eamseys made by the Juvenile Court can only be effective “until terminated or modified by the court, or until” Cathy Sue attains the age of twenty-one years. What the Juvenile Court would probably do, if it should be asked to disregard the void adoption order of the Probate Court and terminate the order of commitment of Cathy Sue to the Eamseys, is apparent from the order which the Probate Court of Eoss County has made in the habeas corpus proceeding. The Juvenile Court in Eoss County is a part of the Probate Court of that county and presided over by the judge of the Probate Court. Section 2151.07, Eevised Code (Section 1639-7, General Code). If therefore this court should consider the orders of commitment made by the Juvenile Court as a reason for denying the relief sought, it would merely be denying, on technical grounds and for an error not assigned, relief which petitioner could probably readily secure by applying to the Juvenile Court. In other words, petitioner could probably readily secure from the same judge, acting as juvenile judge, the identical relief which was granted by him as probate judge in the instant habeas corpus proceeding. We believe therefore that this court should in its discretion decline to consider and decide whether the Probate Court erred in determining that the orders of the Juvenile Court committing Cathy Sue to the Eamseys are void. The Eamseys probably decided not to assign that determination of the Probate Court as error because they realized that a decision in their favor based only upon such assigned error would merely postpone the consequences which they seek to avoid, and also because, by rea *574 son of the provisions of the last paragraph of Section 8004-6, General Code, reliance upon those orders of the Juvenile Court would have been inconsistent with reliance upon the adoption proceeding of the Probate Court.
It follows that the judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman and Stewart, JJ., concur.