OPINION
{¶ 1} Marlin Reynolds, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a plea of guilty, of aggravated robbery with specification, which is a violation of R.C. 2911.01 and a felony of the first degree.
 {¶ 2} On October 20, 2005, appellant and a co-defendant robbed a carryout store using a firearm. Appellant was 16 years old at the time of the crime. A complaint was filed in the juvenile court, alleging that appellant had committed, if by an adult, aggravated *Page 2 
robbery, in violation of R.C. 2911.01, and kidnapping, in violation of R.C. 2905.01. On October 21, 2005, the State of Ohio ("state"), plaintiff-appellee, filed a motion to relinquish jurisdiction and transfer the action to the general division of the common pleas court. On January 11, 2006, the juvenile court found appellant was 16 years old at the time of the conduct, there was probable cause to believe that appellant committed aggravated robbery and kidnapping, the acts would constitute felonies if committed by an adult, the offenses were category two offenses, and appellant had under his control a firearm and brandished it in the commission of the act. Consequently, the juvenile court relinquished jurisdiction to the Franklin County Court of Common Pleas, General Division.
 {¶ 3} On January 20, 2006, appellant was indicted on two counts of aggravated robbery with specification and two counts of robbery with specification. On June 12, 2006, appellant entered a plea of guilty to aggravated robbery with specification, and the state requested nolle prosequi be entered with respect to one count of aggravated robbery with specification and two counts of robbery with specification. A sentencing hearing was held, and the trial court sentenced appellant to a seven-year term of imprisonment, to be served consecutive to a prison term of one year for the specification. The trial court entered judgment on August 15, 2006. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
ASSIGNMENT OF ERROR NO. 1:
 THE JUVENILE COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN RULING THAT DEFENDANT-APPELLANT WAS NOT AMENABLE TO TREATMENT WITHIN THE JUVENILE SYSTEM, AND IN TRANSFERRING THIS MATTER TO ADULT COURT. *Page 3 
ASSIGNMENT OF ERROR NO. 2:
 THE JUVENILE COURT ERRED AND ABUSED ITS DISCRETION BY DETERMINING THAT APPELLANT WAS NOT AMENABLE TO CARE OR REHABILITATION, BASED IN PART ON AN INCOMPLETE PSYCHOLOGICAL REPORT.
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ABUSED ITS DISCRETION BY DELEGATING ITS RESPONSIBILITIES UNDER O.R.C. 2152.12(D) AND (E) TO THE PSYCHOLOGIST.
ASSIGNMENT OF ERROR NO. 4:
 THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GIVE MANDATORY NOTICE TO THE FATHER OF THE JUVENILE OF THE PRELIMINARY HEARING, THE AMENABILITY HEARING, AND THE BINDOVER HEARING, PURSUANT TO OHIO REVISED CODE SECTION 2151.12(G).
ASSIGNMENT OF ERROR NO. 5:
 A JUVENILE COURT ERRS WHEN IT FAILS TO ADDRESS WHETHER OR NOT AN ACT COMMITTED BY A JUVENILE BINDOVER DEFENDANT WOULD BE A FELONY IF COMMITTED BY AN ADULT.
ASSIGNMENT OF ERROR NO. 6:
 A COMMON PLEAS COURT, GENERAL DIVISION, LACKS JURISDICTION OVER A JUVENILE BINDOVER DEFENDANT, WHERE THE JUVENILE COURT NEGLESTS [sic] TO FOLLOW THE PROCEDURE OF O.R.C. SECTION 2125.12 [sic] WHEN RELINQUISHING JURISDICTION.
ASSIGNMENT OF ERROR NO. 7:
 A JUVENILE BINDOVER DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAWS IS VIOLATED WHEN THE JUVENILE COURT RELINQUISHES JURISDICTION WITHOUT FOLLOWING THE PROPER PROCEDURE AS LISTED IN O.R.C. 2125.12 [sic]. *Page 4 
 {¶ 4} We will address appellant's first, second, third, fifth, sixth, and seventh assignments of error together, as they are related. In his first assignment of error, appellant asserts that the juvenile court did not weigh the necessary factors in R.C. 2152.12(D) and (E) as mandated by R.C. 2152.12(B). Appellant argues in his second assignment of error that the juvenile court erred in determining that appellant was not amenable to care or to rehabilitation based upon an incomplete psychological report issued, pursuant to R.C. 2152.12(C), which requires a mental examination before considering a transfer under division (B). Appellant argues in his third assignment of error that the juvenile court erred in allowing the psychologist to weigh the considerations in R.C. 2152.12(D) and (E), instead of the court itself weighing such factors. Appellant argues in his fifth assignment of error that the juvenile court erred when it failed to address whether the act committed by appellant would be a felony if committed by an adult, as mandated by R.C. 2152.12(B). Appellant argues in his sixth assignment of error that the trial court lacked jurisdiction over appellant because the juvenile court neglected to follow the procedures in R.C. 2152.12(B). Appellant argues in his seventh assignment of error that the juvenile court violated appellant's constitutional rights to due process when it relinquished jurisdiction without following the proper procedure in R.C.2152.12(D) and (E), as mandated by R.C. 2152.12(B).
 {¶ 5} All of appellant's arguments in these assignments of error contend the trial court did not follow the proper discretionary bindover procedures in R.C. 2152.12(B). However, despite the trial court's citation to the discretionary bindover provisions included in R.C.2152.12(B), the present matter was subject to the mandatory bindover provisions *Page 5 
included in R.C. 2152.12(A). R.C. 2152.12(B) provides that a transfer is discretionary "[e]xcept as provided in division (A) of this section." R.C. 2152.12(A)(1)(b) provides:
 After a complaint has been filed alleging that a child is a delinquent child by reason of committing a category two offense, the juvenile court at a hearing shall transfer the case if section 2152.10 of the Revised Code requires the mandatory transfer of the case and there is probable cause to believe that the child committed the act charged.
A "category two offense" includes a violation of R.C. 2911.01, aggravated robbery. See R.C. 2152.02(CC)(1).
 {¶ 6} R.C. 2152.10 provides:
 (A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:
 * * *
 (2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:
 (a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.
 (b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.
 {¶ 7} In the present case, because appellant was charged with aggravated robbery, a violation of R.C. 2911.01 if committed by an adult, he was subject to the *Page 6 
mandatory transfer under R.C. 2152.12(A)(1)(b) if: (1) R.C. 2152.10
required the mandatory transfer of the case; and (2) there was probable cause to believe that the child committed the act charged. Appellant met one of the requirements under R.C. 2152.10 for mandatory transfer because he was charged with a category two offense, he was 16 years of age at the time of the act, and he was alleged to have had a firearm and brandished the firearm during the commission of the act, consistent with R.C. 2152.10(A)(2)(b). The juvenile court further found there was probable cause to believe appellant committed the acts charged. Appellant does not contest any of the juvenile court's findings on these issues. Therefore, because the mandatory transfer procedures in R.C.2152.12(A) apply to the present case, the procedures for a discretionary transfer in R.C. 2152.12(B), as well as 2152.12(C), (D), and (E), are inapplicable. Accordingly, appellant's first, second, third, fifth, sixth, and seventh assignments of error must be overruled.
 {¶ 8} Appellant argues in his fourth assignment of error that the juvenile court erred when it failed to give mandatory notice to appellant's father of the preliminary hearing, the amenability hearing, and the bindover hearing pursuant to R.C. 2152.12(G).
R.C. 2152.12(G) provides:
 The court shall give notice in writing of the time, place, and purpose of any hearing held pursuant to division (A) or (B) of this section to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing.
 {¶ 9} Juv.R. 30(D) similarly provides:
 Notice in writing of the time, place, and purpose of any hearing held pursuant to this rule shall be given to the state, the child's parents, guardian, or other custodian and the *Page 7 
child's counsel at least three days prior to the hearing, unless written notice has been waived on the record.
 {¶ 10} Here, appellant claims that his father was never given notice of any of the juvenile hearings. The record before this court does not indicate that appellant's father was given notice of the hearings, although appellant's mother was given notice and appeared at the hearings. The record also fails to indicate any waivers of notice. The first issue, therefore, is whether it was required that appellant's father receive notice, or whether it was sufficient that his mother received notice and attended the hearings. The state asserts that there is no authority interpreting R.C. 2152.12(G) to require notice be given to both parents. The state contends that such a requirement would lead to absurd results and would impede many cases in which only one parent has custody.
 {¶ 11} R.C. 2152.12(G) does not define "parents," and does not indicate whether both parents are required to constitute sufficient notice and satisfy due process. Although a literal reading of "parents" would seem to require notice to both parents, we find that such a reading would render the use of the term illogical under some circumstances such as where only one parent is living or the identity of one parent is unknown. Under such hypothetical circumstances, clearly notice to a single parent would be sufficient. See Johnson v.Allonas (1996), 116 Ohio App.3d 447, 450-451 (hypothetical situation demonstrates absurd results of statute interpretation). It is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result. Mishr v. Poland Bd. of Zoning Appeals (1996),76 Ohio St.3d 238, 240. Further, that the statute states that notice "shall" be given to the "parents," yet fails to indicate the proper procedure when notice to one parent is an impossibility, demonstrates that "parents" *Page 8 
should not be strictly interpreted to mean both parents. We also note that Juv.R. 2(Y) acknowledges that there are circumstances under which only one parent may be involved in a juvenile proceeding. Juv.R. 2(Y) defines a "party" as a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's "parent or parents," and various other persons. Thus, Juv.R. 2(Y) contemplates that both parents need not necessarily be a party to the action.
 {¶ 12} We find this interpretation consistent with legislative intent. Principles of statutory construction require that courts interpret statutes to reflect a consistent legislative intent. Akron v.Meissner (1993), 92 Ohio App.3d 1, 6. R.C. 2152.12(G) certainly reflects a legislative intent to protect juveniles by informing their caregivers of any pending actions involving the juveniles so that the caregivers can offer assistance, guidance, and support to the juveniles. SeeState v. Taylor (1985), 26 Ohio App.3d 69, 71 (the purpose of the notice requirements in former R.C. 2151.26[D], which is identical to R.C.2152.12[G], is to protect the juvenile). Although it is better to give notice to both parents when possible, notice to one parent when the other's identity or whereabouts are unknown still serves to protect the juvenile and furthers the legislative goals of R.C. 2152.12(G).
 {¶ 13} The present case is unlike Taylor, supra, the only case cited by appellant in support of his argument, in which the court found notice was insufficient to effect a proper bindover from the juvenile court to the court of common pleas. In Taylor, only an adult sister of the juvenile was present at the proceedings, and there was no evidence that she was a "guardian" or "custodian." The court noted, "[h]ere, it appears from the record that no such notice was given to anyone, let alone the parents, guardian or custodian." Id., at *Page 9 
71. However, in the present case, proper notice was given to appellant's mother, and she attended the proceedings. Therefore, unlike inTaylor, at least one party listed under R.C. 2152.12(G) received notice in the present case.
 {¶ 14} Notwithstanding the foregoing, we also find that, even if appellant's father was entitled to notice, pursuant to R.C. 2152.12(G), appellant can demonstrate no prejudice resulting from the failure of notice to his father. At a minimum, procedural due process requires that a party be afforded notice of, and an opportunity to be heard. State v.Hochhausler (1996), 76 Ohio St.3d 455, 459. To prevail, however, appellant must have demonstrated he was prejudiced by the failure of his father to receive notice. See In re Zachariah T., Wood App. No. WD-04-059, 2005-Ohio-2488, at ¶ 14-15 (despite lack of notice, party must still demonstrate prejudice arising from the lack of notice). In the present case, appellant does not indicate how, or even if, he was prejudiced by the lack of notice to his father. After reviewing the circumstances of this case, we can find no prejudicial error. The father's absence from the proceedings had no effect on the outcome of the proceedings, and appellant claims none. Appellant's mother received notice and was present for all of the proceedings. There is no evidence that appellant's mother might have harbored any prejudice or ill feelings against her son that could have affected her alignment with him and compromised her duty to protect the best interests of her child. See, e.g., State v. West, 167 Ohio App.3d 598, 2006-Ohio-3518, fn. 1 (McFarland, J., dissenting) (noting that, because the murdered victim was the child's maternal aunt, the very nature of the offense and the dynamics of the family raise serious concerns as to the ability of the child's mother to protect the best interests of the child). Therefore, because *Page 10 
we can find no prejudicial impact resulting from the failure of notice to appellant's father, we can find no reversible error.
 {¶ 15} We also find State v. Wallace (May 20, 1992), Lorain App. No. 91CA005075 helpful. In Wallace, the juvenile appealed after being bound over and tried as an adult. The juvenile argued on appeal that the trial court erred when it took jurisdiction of him. The juvenile contended he was transferred to the court of common pleas without his parent, guardian or custodian receiving proper notice of the hearings because the court failed to determine who was his parent, guardian or custodian. In finding the bindover was proper, the appellate court seemed to view significant that there was a caregiver of some type notified and present to safeguard the juvenile's rights, consistent with the statutory purpose of protecting the juvenile, rather than whether notice was technically proper to one of the parties listed in the statute. The appellate court concluded that, despite a lack of finding that the juvenile's grandmother was actually either his legal guardian or custodian, notice was proper because the record indicated that the juvenile's grandmother was "acting as" a guardian based upon her signing numerous forms as "guardian"; the juvenile court explained to the juvenile and some family members the nature and purpose of the amenability hearing; and the juvenile's grandmother and aunt were present and testified at the amenability hearing. In the present case, not only was appellant's mother actually one of the types of persons listed in R.C. 2152.12(G), but she also attended the hearings and was able to appreciate the nature and purpose of the hearings.
 {¶ 16} Although we have been unable to find any controlling authority directly on point with the present issue, this precise issue was addressed by the dissenting opinion in *Page 11 West, supra, which we feel compelled to discuss. In West, a juvenile was convicted of murdering his maternal aunt after the juvenile court transferred jurisdiction over him to the general division of the common pleas court for criminal prosecution. Although the majority failed to address the merits of the issue, the dissenting opinion, sua sponte, thoroughly addressed whether the transfer of jurisdiction was proper when notice of the bindover proceedings was given only to the juvenile's mother and not his father, who was separated from the mother at the time of the proceedings. The dissent stated that the Ohio legislature had ample opportunity to amend the language in R.C. 2152.12(G) to permit notice to only one parent when it made sweeping changes to juvenile law in S.B. No. 179, but it had not done so. Id., at 610. Additionally, the dissent stated that, because of the "shall" language in R.C. 2152.12(G), the court below was required to give written notice of the preliminary and amenability hearings to both the child's mother and father. Id., at 610-611. The language pertaining to notices was very clear, opined the dissent, and because the plural term "parents" was used, the court was required to give written notice to both the mother and the father. Id., at 611. Further, as mentioned above, the dissent found notice to the father even more important under the circumstances before it because the murder victim was the child's maternal aunt, raising the concerns that the child's mother could not adequately protect the interests of the child.
 {¶ 17} However, we do not follow the rationale put forth by the dissent in West not only because West was rendered by a court in another appellate jurisdiction, but, also, because it was not the reasoning of the majority. Also, as previously noted, the present case, unlikeWest, did not indicate the juvenile's mother had any basis for prejudice that would suggest that she alone could not fully protect the best interest of the juvenile. *Page 12 
Further, as in the present case, the juvenile in West failed to raise the failure of notice to the father at the trial court level, and the majority in West, in response to the dissenting opinion, concluded that, as a result, the juvenile waived the argument for purposes of appeal. See West, at 609. Significantly, although the dissent claimed that the notice requirement could not be waived, the Ohio Supreme Court did not accept an appeal of West for review. See State v. West,111 Ohio St.3d 1492, 2006-Ohio-6171.
 {¶ 18} Therefore, we are satisfied that, under the circumstances of this case, appellant's procedural due process rights were adequately protected, and the juvenile court did not err when it failed to give notice to appellant's father of the various bindover hearings pursuant to R.C. 2152.12(G). For the above reasons, appellant's fourth assignment of error is overruled.
 {¶ 19} Accordingly, appellant's first, second, third, fourth, fifth, sixth, and seventh assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 SADLER, P.J., and TYACK, J., concur. *Page 1